**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| John L. Brutz, et al., | ) | **CASE NO. 1:09 CV 2564** |
| | ) | |
| Plaintiffs, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| Raymond S. Stillwell, et al., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |


**INTRODUCTION**

This matter is before the Court upon the following motions:  Motion to Dismiss for Lack

of Personal Jurisdiction and Failure to State a Claim filed by defendant Kevin House (Doc. 31);

Motion to Dismiss Plaintiffs' Second Interlineated Amended Complaint Pursuant to FRCP

12(b)(6) and FRCP 12(b)(1), filed by defendant Norbert Wierszewski (Doc. 32); Motion to

Dismiss filed by defendants Raymond Stillwell and Mark Spizzo (Doc. 33); plaintiffs' Motion to

File Supplemental Complaint FRCP 15(d) (Doc. 37); plaintiffs' Motion for the Appointment of a

Receiver (FRCP 66 and 28 U.S.C.S. § 754) (Doc. 38); Motion to Intervene of Spirtas Wrecking

Company Canada, Spirtas Wrecking Company New Richmond, and Spirtas Wrecking Company

1

Pontiac (Doc. 42); plaintiffs' Motion for Leave to File Third Amended Complaint to Add a Violation of 18 U.S.C.S. § 1962(a) and to Further Establish Continuity (Doc. 46); and Motion of Defendant Kevin House to Strike Portion of Plaintiffs' Reply in Support of Motion to Appoint Receiver (Doc. 51).  This is a Racketeer Influenced and Corrupt Organizations (RICO) Act case. For the following reasons, defendants' Motions to Dismiss are GRANTED; plaintiffs' Motion to File Supplemental Complaint is DENIED; plaintiffs' Motion to Amend is DENIED; and plaintiffs' Motion for the Appointment of a Receiver, the Motion to Intervene, and defendant House's Motion to Strike are MOOT.

**FACTS**

The following facts, which must be construed in the light most favorable to plaintiffs, are taken from the second amended interlineated complaint (Doc. 29) and from the Joint Venture Agreement.  Plaintiffs, Michael L. Cohl and John L. Brutz, bring this action against defendants, Raymond S. Stillwell, Mark D. Spizzo, Norbert T. Wierzewski, and Kevin House, alleging that defendants illegally terminated a joint venture between plaintiffs and defendants through a pattern of racketeering activity.

**A.      The Joint Venture Agreement**

Plaintiffs met defendants Stillwell and Spizzo in June 2009 to discuss the acquisition of three shut-down Canadian paper mills that Stillwell and Spizzo had a contract to purchase.  In July 2009, the four individuals, Cohl, Brutz, Stillwell, and Spizzo, entered into a Joint Venture Agreement (hereinafter "the Agreement") to acquire ownership of the three paper mills.  The Agreement stated that Cohl and Brutz were "in the business of demolishing and scrapping commercial and industrial structures, including the business of salvaging and marketing the

2

recoverable materials in said structures," and that Stillwell and Spizzo were "in the business of acquiring closed industrial structures and the environmental remediation and redevelopment of said structures."  The purpose of the Joint Venture, as stated in the Agreement, was "to acquire, demolish, salvage and market materials salvaged during the demolition process, remediate, rehabilitate the properties, and redevelop the properties."  The Agreement also provided as follows:

> The Joint Venture ("Joint Venture") shall be known as CBSS Enterprises and shall consist, initially, of Cohl, Brutz, Stillwell, and Spizzo.  Cohl and Brutz, jointly, and Stillwell and Spizzo, jointly, may assign their interests in the Joint Venture to an entity of their choice at any time after the execution hereof and shall provide Notice to the other parties of their assignment, at which time the entity to which such interests are assigned shall be bound by the terms, conditions and provisions of this Agreement.

The proceeds of the Joint Venture, after costs, were to be split equally between "CB" (Cohl and Brutz) and "SS" (Stillwell and Spizzo).  On September 11, 2009, the parties to the Agreement signed an Addendum acknowledging that Stillwell and Spizzo assigned their rights under the Agreement to two Canadian corporations, SSPM and SSPM#2.  The Addendum further provided that all of the parties would create a new Wyoming corporation known as SSCB Resources, Inc. "for the purposes of dealing with salvage operations and such other purposes as the parties shall agree."  Additionally, the Addendum provided that SSPM, SSPM#2, and SSCB Resources, Inc. were to be owned fifty percent by Wyoming corporation F.S. Edwards Redevelopment Inc.[1] and fifty percent by Colorado company Green Investment Properties, LLC.  Finally, the Addendum

---

[1]  Plaintiffs refer variously to F.S. Edwards Redevelopment Inc. and F.S. Edwards Redevelopment Corporation, which appear to be the same company.  The Court has followed the convention of the parties with respect to the particular allegations.

3

transferred all of SSPM's and SSPM#2's rights in demolition products[2] to SSCB.

After entering into the Agreement, plaintiffs allege they introduced Stillwell and Spizzo to important people and companies that would be critical to the success of the Joint Venture. Plaintiffs allege that at a meeting in September 2009, also attended by defendant Wierszewski, the parties to the Joint Venture reached a deal to acquire financing and demolish the three paper mills.  Plaintiffs allege that prior to this meeting, Stillwell and Spizzo were unfamiliar with Wierszewski, who was the owner and operator of a large demolition company.  Plaintiffs allege that Wierszewski agreed to partner with Cohl and Brutz to be the demolition contractor for the paper mills.[3]

Stillwell and Spizzo terminated the Agreement on October 29, 2009, by faxing written notice to Cohl and Brutz.  The reason for the termination was that Cohl and Brutz had failed to perform the obligations outlined in paragraphs 6 and 8(a) of the Agreement.  These provisions required Cohl and Brutz to obtain financing for the acquisition, demolition, restoration, rehabilitation, environmental remediation, maintenance, and all other expenses related to the properties, and also provided that Cohl and Brutz will be reimbursed for their costs.  Plaintiffs further allege that Stillwell and Spizzo "corrupted and unlawfully influenced" Wierszewski to

---

[2]    "Demolition Products" is defined in the Addendum as "the structures and other materials situated on the land which are to be demolished and sold, including, without limitation, the materials comprising the buildings and other structures situated on the land and all machinery, equipment and other personal property situated on the Smurfit Properties, excluding any agreed property to be used in the redevelopment of the respective sites and further excluding the Excluded Equipment as defined in the Smurfit Purchase Agreements."

[3]    Plaintiffs make clear in the brief in opposition to Wierszewski's motion to dismiss that no formal partnership agreement existed between Brutz, Cohl, and Wierszewski, and that the three individuals simply agreed to work together.

4

"betray" Brutz and Cohl and join with Stillwell and Spizzo, "even though Wierszewski was introduced to Stillwell and Spizzo by Cohl and Brutz."

Plaintiffs allege that the termination of the Agreement was a result of a RICO enterprise engaging in a pattern of racketeering activity.

### B.    The RICO Allegations

Plaintiffs allege that the RICO enterprise is the individual defendant Stillwell.  They allege that the "Stillwell Enterprise" has operated since at least 2003 and has engaged in two other schemes, one involving illegal tax avoidance in 2003 and one involving a steel mill in 2006.  Plaintiffs allege that the scheme of the Stillwell Enterprise was to obtain the knowledge and connections of plaintiffs who had demolition skills that Stillwell and Spizzo did not have, corrupt the persons and companies brought into contact with the Joint Venture, illegally terminate the Joint Venture, and then "convert the business opportunity brought into the Joint Venture by Cohl and Brutz to the advantage of Stillwell, Spizzo and the Stillwell Enterprise." Plaintiffs also allege that it was the Stillwell Enterprise's regular way of doing business to make settlements with its victims when its fraud was discovered, and that in this case, the Enterprise offered plaintiffs a $1 million settlement.

Plaintiffs allege that defendants conducted the affairs of the Enterprise through a pattern of racketeering activity.  Plaintiffs allege that the predicate acts engaged in by the Enterprise, assisted by the defendants, include sending numerous false documents via the U.S. mail, via telephone, and over the internet, and "engaging in other illegal actions upon behalf of the Stillwell Enterprise."  Plaintiffs allege the following with respect to the predicate acts:  "The use of certain interstate telephone calls and the use of electronic emails and interstate telephone calls,

5

interstate wire transfer of funds and other electronic communications were not necessarily in and

of themselves fraudulent representation but were all sent to further and/or assist the Defendants

in carrying out their scheme to defraud the plaintiffs."

Plaintiffs describe the following specific predicate acts:

- On August 14, 2009, defendant Wierszewski, through his company Seaway Metals, wire-transferred $20,000 to F.S. Edwards Redevelopment Corporation, which was owned and controlled by plaintiff Cohl.  The money was payment for metals Wierszewski purchased from Cohl.  Plaintiffs allege that Wierszewski knew that Cohl would use this money to pay defendant House via international wire transfer, and that the purpose of Wierszewski's wire transfer was to lull plaintiffs into a false sense of security that the Joint Venture was proceeding as it should when these wires were actually sent to assist the Stillwell Enterprise in defrauding plaintiffs.

- On September 19, 2009, plaintiffs wire-transferred $25,000 to Circle Green LLC, a company controlled by defendants Stillwell and Spizzo.  Plaintiffs allege that Stillwell and Spizzo fraudulently received these funds on behalf of the Stillwell Enterprise, as they had no intention of legitimately completing the Joint Venture.

- On September 25, 2009, plaintiffs wire-transferred $25,000 to Circle Green LLC, a company controlled by defendants Stillwell and Spizzo.  Plaintiffs allege that Stillwell and Spizzo fraudulently received these funds on behalf of the Stillwell Enterprise, as they had no intention of legitimately completing the Joint Venture.

- The wire transfers of September 19 and September 25 were first wired by defendant Wierszewski or companies controlled by him to plaintiff Cohl as payment for metals that Wierszewski had purchased from Cohl.  Plaintiffs allege that Wierszewski knew that making these payments to Cohl was the first step in Cohl forwarding these funds to defendants Stillwell and Spizzo, and that Wierszewski's purpose and intention was to further the goals of the Stillwell Enterprise in cheating plaintiffs out of the immense profits from the Joint Venture.

- On October 17, 2009, Stillwell sent an email to Cohl concerning environmental insurance on behalf of the Joint Venture.  Plaintiffs allege that the purpose of this email was to lull plaintiffs "into a false sense of security when the true purpose of the email was to further the illicit purposes of the Stillwell Enterprise."

- On October 28, 2009, defendant House sent an email to Cohl, Brutz, Stillwell, and Spizzo  "to lull the plaintiffs Cohl and Brutz into a false sense of security that

6

the Joint Venture was proceeding as contemplated by the parties."

• On October 29, 2009, defendant House sent an email to Cohl, Brutz, Stillwell, and Spizzo concerning a "use of funds" statement. Plaintiffs allege this email was sent to lull the plaintiffs into a false sense of security that the Joint Venture was proceeding as understood by the parties.

• On October 29, 2009, defendants Stillwell and Spizzo faxed the notice terminating the Joint Venture. Plaintiffs allege that the fax was sent in order to further the purposes of the Stillwell Enterprise.

• On November 9, 2009, Cohl and Wierszewski met at a restaurant in Redford, Michigan, where Wierszewski allegedly told Cohl that Stillwell convinced Wierszewski to abandon the demolition plan encompassed by the Joint Venture Agreement, to invest money with Stillwell, and to demolish the paper mills with Stillwell and Spizzo. Plaintiffs also allege that Wierszewski told Cohl that Stillwell was in the process of fabricating false criminal charges against Cohl, and that Stillwell had told him he could make more money by "double crossing Cohl and Brutz and joining with Stillwell and gaining for Stillwell, Spizzo, and Norbert Wierszewski, all of the advantages that were put together on behalf of the Joint Venture Agreement by Brutz and Cohl." Further, plaintiffs allege that Wierszewski told Cohl that he would be smart to "take the million offered by Stillwell and run and avoid criminal prosecution."

The Second Amended Interlineated Complaint contains two causes of action. Count one is for a violation of 18 U.S.C. § 1962(c), which prohibits conducting the affairs of an enterprise through a pattern of racketeering activity. Count two is for a violation of 18 U.S.C. § 1962(d), which prohibits any person from conspiring to violating 18 U.S.C. § 1962(a)-(c). Defendant Wierszewski moves to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. Defendant House moves to dismiss the complaint for lack of personal jurisdiction and failure to state a claim. Defendants Stillwell and Spizzo move to dismiss the complaint for failure to state a claim. Plaintiffs oppose the motions.

Plaintiffs also move for the appointment of a receiver to protect the assets of the Joint Venture. Defendants oppose this motion, and Spirtas Wrecking Company Canada, Spirtas

7

Wrecking Company New Richmond, and Spirtas Wrecking Company Pontiac move to intervene for the purpose of opposing this motion.  Defendant House moves to strike a portion of plaintiffs' reply in support of the motion to appoint receiver.  Plaintiffs object to the motion to strike and to the request to intervene.  Plaintiffs further move for leave to file a supplemental complaint, and for leave to file a third amended complaint to add a violation of 18 U.S.C. § 1962(a).  Defendants also oppose both of these motions.

## I.    MOTIONS TO DISMISS

### STANDARD OF REVIEW

### A.    Subject-Matter Jurisdiction

When a court's subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party seeking to invoke jurisdiction bears the burden of proof.  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).  A 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Facial attacks question the sufficiency of the jurisdictional allegations in the complaint.  *Id*.  Thus, those allegations must be taken as true and construed in the light most favorable to the nonmoving party.  *Id*.  Factual attacks, however, challenge the actual fact of the court's jurisdiction.  *Id*.  In such cases, the court is free to weigh any evidence properly before it to satisfy itself as to the existence of its power to hear the case.  *Id*.  *See also Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

### B.    Personal Jurisdiction

Presented with a motion to dismiss for lack of personal jurisdiction and opposition

8

thereto, "a court has three procedural alternatives:  it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions."  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The court has discretion to decide which method it will follow.  *Id.* However the court handles the motion, the plaintiff always bears the burden of establishing that jurisdiction exists.  *Serras v. First Tennessee Bank National Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).  If the defendant supports his motion to dismiss with affidavits, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.  *Theunissen*, 935 F.2d at 1458 (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974).

In the absence of an evidentiary hearing, the court must view the pleadings and affidavits in the light most favorable to the plaintiff and not consider the controverting assertions of defendant.  *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721-22 (6th Cir. 2000).  Thus, the plaintiff's burden is only that of making a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.  *Id.  See also Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) ("When the district court dismisses a complaint pursuant to Rule 12(b)(2) without conducting an evidentiary hearing on the issue of personal jurisdiction . . . the plaintiff need only make a *prima facie* showing of jurisdiction . . . [and the court] will not consider facts proffered by the defendant that conflict with those offered by the plaintiff[.]").  This burden is "relatively slight." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988).  A *prima facie* showing is made by "establishing with reasonable particularity sufficient contacts between [defendant] and the forum state to support jurisdiction."  *Neogen Corporation v. Neo Gen Screening, Inc.*, 282

9

F.3d 883, 887 (6th Cir. 2002) (internal citations omitted).   Under this standard, dismissal is "proper only if *all* the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (quoting *Theunissen*, 935 F.2d at 1458) (emphasis added by *Kerry Steel* court).

### C.     Failure to State a Claim

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445, at *1 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).  In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256, at *3 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc*., 123 F.3d 394, 400 (6th Cir. 1997)).  "To survive a Rule 12(b)(6) motion, the nonmoving party must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .  Factual allegations must be enough to raise a right to relief above the speculative level." *ABS Industries, Inc. ex rel. ABS Litigation Trust v. Fifth Third Bank,* 2009 WL 1811915, at *3 (6th Cir. June 25, 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

### ANALYSIS

A.    **Defendant Wierszewski's Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Article III of the United States Constitution requires that parties invoking federal jurisdiction must allege an actual case or controversy. *Airline Prof'ls Ass'n of the Int'l Bhd. of Teamsters v. Airborne, Inc.,* 332 F.3d 983, 986 (6th Cir. 2003) (citing *O'Shea v. Littleton,* 414 U.S. 488, 493-94 (1974)).  To satisfy this case or controversy requirement, a plaintiff must establish standing by showing three elements:  "(1) an injury in fact that is concrete and particularized; (2) a connection between the injury and the conduct at issue– the injury must be fairly traceable to the defendant's action; and (3) [a] likelihood that the injury would be redressed by a favorable decision of the Court."  *Id.* at 987 (citing *Courtney v. Smith,* 297 F.3d 455, 459 (6th Cir. 2002)). Standing is more than a pleading requirement, and each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.* with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)).  If a plaintiff cannot establish standing, dismissal under Fed. R. Civ. P. 12(b)(1) is appropriate.

The general rule is that a shareholder does not have standing to sue in his own name for injury to a corporation.  *Warren v. Manufacturers Nat'l Bank,* 759 F.2d 542, 544 (6th Cir. 1985).  A shareholder can only sue in his own name when the shareholder can show the defendant violated a duty owed directly to him, not to the corporation.  *Id.*  Diminution in value to corporate assets is insufficient to confer individual standing to sue on a shareholder.  *Id.*  This rule also applies to RICO claims.  *Id.*

Defendant Wierszewski argues that plaintiffs do not have standing to bring the complaint against defendants because plaintiffs are merely shareholders in the entities that plaintiffs allege

11

own the interests of the Joint Venture. Wierszewski argues that the Agreement and the Addendum show that the interests in the Joint Venture were owned only by the following entities: SSPM, SSPM#2, F.S. Edwards Redevelopment Inc., and Green Investment Properties, LLC.

Plaintiffs respond that plaintiffs are the real parties in interest and that any transfers set forth in the Addendum were frustrated by the Stillwell Enterprise before the transfers had been made. Plaintiffs further argue that the general rule, while applicable to corporations, does not apply to a joint venture. Finally, plaintiffs argue that the fraud in this case was committed against the plaintiffs as individuals and not against any corporation.

Defendant Wierszewski replies that the Joint Venture was structured so that only entities would own the assets of the Joint Venture, and that plaintiffs are not the real parties in interest.

Upon review, the Court finds that defendant Wierszewski's arguments are not supported by the Agreement or the Addendum. The Agreement provides that Cohl and Brutz could jointly assign their interests in the Joint Venture to an entity of their choice at any time after the execution of the Agreement, and that Stillwell and Spizzo could jointly do the same. The Addendum reflects that Stillwell and Spizzo assigned their interests to SSPM and SSPM#2, and that all four parties to the Agreement formed SSCB Resources, Inc. Although the Addendum states that SSCB, SSPM, and SSPM#2 are to be owned in equal parts by F.S. Edwards Redevelopment Inc. and Green Investment Properties, LLC, the only interests that were transferred to SSCB were SSPM's and SSPM#2's interests in Demolition Products– interests that had originally belonged to Stillwell and Spizzo. The Addendum does not convey or transfer the Joint Venture rights of Cohl and Brutz to a corporate entity, nor does it mention the rights of

12

Cohl and Brutz at all.  Although Cohl owns F.S. Redevelopment Inc., it appears that both Cohl and Brutz also retain their individual interests granted to them in the Agreement.  Accordingly, the Court finds that plaintiffs have standing to sue in their individual capacities.

**B.      Defendant House's Motion to Dismiss for Lack of Personal Jurisdiction**

The Due Process Clause protects a person's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (internal quotations and citations omitted).  By requiring that a person have fair warning that a particular activity may subject him to the jurisdiction of a foreign sovereign, the Due Process Clause gives a degree of predictability to the legal system that allows a potential defendant to structure his primary conduct with some minimum assurance as to where that conduct will and will not render him liable to suit.  *Id.*

The RICO statute does not authorize international service of process.  18 U.S.C. § 1965. Thus, plaintiffs must rely on the forum state's long-arm statute and constitutional due process to establish that the Court has personal jurisdiction over defendant House.  *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.,* 23 F. Supp. 2d 796, 806 (N.D. Ohio 1998) (citing *Stauffacher v. Bennett,* 969 F.2d 455, 460-61 (7th Cir. 1992)).  "The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements."  *Calphalon*, 228 F.3d at 721-22 (internal citations omitted).

The Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause.  The central inquiry, nevertheless, is whether "minimum contacts are satisfied so as not to offend 'traditional notions of fair play and substantial justice.'"  *Calphalon,* 228 F.3d at 721.

13

To establish that the Court has general jurisdiction over a defendant, the plaintiff must make "a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant." *Kerry Steel*, 106 F.3d at 149.  Specific personal jurisdiction, on the other hand, exposes the defendant to suit in the forum state "only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Id.* (internal citations omitted).

A court applies a three-part test to determine whether the court has specific jurisdiction over a defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).  In other words, there must be a "relationship among the defendant, the forum, and the litigation" to support a finding of specific jurisdiction over a defendant.  *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984).  Defendant's "conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.  The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in

14

> each case that there be some act by which the defendant purposefully
> avails itself of the privilege of conducting activities within the forum
> State, thus invoking the benefits and protections of its laws.

*Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Even a single act can support

jurisdiction so long as it creates a "substantial connection" with the forum rather than an

"attenuated" one.  *Burger King*, 471 U.S. at 475 n.18.

Defendant House argues that the Court has neither specific nor general jurisdiction over

him.

### 1.     General Personal Jurisdiction

House argues that the complaint is devoid of any allegations that he had continuous and

systematic contact with Ohio sufficient to confer general jurisdiction, and in fact, refers to House

only in connection with two emails that he sent and a wire transfer that he received in Canada.

Further, House states in his affidavit that he has never lived, owned property, entered into

contracts, paid taxes, been licensed to practice law, advertised for clients, or provided legal

services to clients in Ohio, nor has he ever been to Ohio.

Plaintiffs argue that the Court has general jurisdiction over House under Ohio's long-arm

statute and under 18 U.S.C. § 1965.  In support, they offer the affidavit of plaintiff Cohl, a

Michigan resident, who states that House was Cohl's attorney several times over a period of five

years, and that Cohl retained him to represent Cohl and Brutz in the Joint Venture and paid him

$20,000.  Cohl further states in his affidavit that House was a co-director in a Canadian

corporation along with Cohl and Wierszewski.

In the absence of an evidentiary hearing, the Court must view the allegations in the

complaint and the affidavits in the light most favorable to plaintiffs.  Upon review, the Court

15

finds that plaintiffs have not made a prima facie case of general personal jurisdiction over defendant House.  Allegations showing House's continuous and systematic contacts with Ohio are completely absent from the complaint.  Plaintiffs allege that House is a citizen of Canada who acted in two capacities:  (1) as an attorney who represented Cohl, Brutz, Stillwell, and Spizzo in their acquisition of properties; and (2) as a member of the Stillwell Enterprise.[4] Plaintiffs further allege that House sent two emails addressed to Cohl, Brutz, Stillwell, and Spizzo.  Finally, plaintiffs allege that defendant Wierszewski wire-transferred $20,000 to F.S. Edwards Redevelopment Corporation with the knowledge that Cohl would wire the money to House.   Plaintiff Cohl's affidavit adds little substance:  Cohl alleges that House was his attorney in the past, that Cohl hired him to represent himself and Brutz, and that Cohl paid him $20,000 to do so.

Brutz is the only Ohio party involved in this case, so it appears that plaintiffs are relying on House's contacts with Brutz to establish general jurisdiction.  Even if House did represent Brutz,[5] the representation of an Ohio citizen in connection with a Joint Venture, the subject of which is in Canada, and two emails sent to an Ohio citizen over the course of two days do not establish continuous and systematic contacts with Ohio.  Moreover, plaintiffs' argument that the RICO statute is enough to give the Court jurisdiction over House is not well- taken.  *See Iron*

---

[4]     The Court notes that alleging House to be a member of the Stillwell Enterprise contradicts plaintiffs' subsequent allegation that the Stillwell Enterprise consisted of one individual, defendant Stillwell.

[5]     House disputes that he ever represented Brutz individually.  At this stage of the proceedings, however, the Court must view the allegations in the light most favorable to plaintiffs.

*Workers,* 23 F. Supp. 2d at 806.[6]  Accordingly, the Court finds that general personal jurisdiction over House does not exist.

## 2.    Specific Personal Jurisdiction

Defendant House argues that sending two emails to Brutz and representing him in connection with the Joint Venture does not constitute purposeful availment, and in fact constitutes random, fortuitous, and attenuated contact with Ohio insufficient to permit the exercise of personal jurisdiction.  House specifically argues that the law is well-settled that sending an email to a generic email address, with no indication that the recipient accessed the account in the forum state, is not purposeful availment.  Additionally, House argues that even if plaintiffs' allegation that House agreed to represent Brutz in connection with the Joint Venture were true, a contract between a plaintiff and an out-of-state party is not sufficient to show purposeful availment in the absence of any evidence that the contract was negotiated, created, performed, or breached in the forum state.  House also argues that the operative facts of the controversy do not arise from his contacts in Ohio, thus plaintiffs cannot show that their cause of action arises from his activities in Ohio.  He points out that plaintiffs have not alleged that he engaged in any activities in Ohio.  House argues that the contact plaintiffs allege that House had with Ohio was insufficient to create a substantial enough connection with Ohio for the Court's exercise of jurisdiction over him to be reasonable.  House further argues that litigating from Canada would be burdensome and that Ohio has little interest in this dispute.  Additionally, House argues that the forum selection clause in the Agreement does not subject him to personal

---

[6]    The Court notes that elsewhere in plaintiffs' brief, plaintiffs acknowledge that the RICO statute does not authorize international service of process to establish personal jurisdiction.

jurisdiction as he was not a party to the Agreement, and that federal courts in Ohio do not subscribe to the "conspiracy theory of jurisdiction" where a defendant is subject to personal jurisdiction in a RICO conspiracy case if one co-conspirator meets the constitutional minimum contacts analysis.

Plaintiffs respond by stating that Cohl's affidavit establishes that House was well aware that Brutz was an Ohio resident, that the RICO cause of action arises from House's activities in Ohio as House agreed to protect Brutz's Ohio legal interests, and that House's activities caused "catastrophic consequences" to Brutz in Ohio through fraudulently transacting business in Ohio and by contracting to supply services in Ohio.  Plaintiffs appear to argue that House purposefully availed himself of the privilege of doing business in Ohio by representing an Ohio resident, and that House created a substantial connection with Ohio through both the representation of plaintiffs and the sending of the two emails.  Plaintiff does not address whether the exercise of the Court's jurisdiction would be reasonable.  Plaintiffs also do not respond in any substantial way to House's arguments regarding the forum selection clause or his status as a co-conspirator.

In the absence of an evidentiary hearing, the Court must view the allegations in the complaint and the affidavits in the light most favorable to plaintiffs.[7]  Upon review, the Court finds that plaintiffs have not made a prima facie case of specific personal jurisdiction over House.

Plaintiffs do not show House purposefully availed himself of the privilege of transacting

---

[7]        Defendant House attached to his reply brief several documents purporting to show that he did not represent Brutz individually.   As these documents contradict plaintiffs' allegations, the Court will not consider the documents in reaching its decision on personal jurisdiction.  *Calphalon*, 228 F.3d at 721-22.

business in Ohio.  Although plaintiffs argue otherwise, the complaint and the affidavits are devoid of any evidence that indicates House knew that Brutz was an Ohio citizen.  Plaintiffs argue that Cohl's affidavit establishes that House was well aware that Brutz was an Ohio citizen, but the affidavit contains no facts related to Brutz's citizenship.  Moreover, House states in his affidavit that he was unaware that Brutz was an Ohio citizen.  Although not set forth in the complaint or Cohl's affidavit, plaintiffs argue that House knew Brutz was an Ohio citizen because Brutz's address was listed in the Agreement, a copy of which was provided to House. The Court notes that the address given for Brutz in the Agreement is plaintiffs' counsel's address, and that the same address is given for Cohl, who is a Michigan citizen, thus plaintiffs' argument is not well-taken.

Even if House had been aware that Brutz was an Ohio citizen, nothing in the complaint or the affidavits shows that House sought to create substantial and continuous consequences in Ohio such that the Court could find purposeful availment.  Rather, Cohl's affidavit shows that he sought out House in Canada to represent him and Brutz in connection with a Canadian transaction involving Canadian properties.  Any contacts with Brutz in Ohio occurred because Brutz chose to be located there, not because House sought to extend his business into Ohio.  *See Rice v. Karsch,* 154 Fed. Appx. 454, 463 (6th Cir. 2005) (defendant's contacts occurred with forum state because plaintiff chose to have offices in forum state, not because defendant sought to further his business there (citing *Calphalon,* 228 F.3d at 723)).  Thus, the emails sent from House to Brutz upon which plaintiffs' rely to show purposeful availment and a substantial connection with Ohio are simply random, fortuitous, and attenuated contacts which are insufficient for the Court to exercise personal jurisdiction over House.

19

Moreover, the emails were sent by House to "johnlbrutz@gmail.com."  The Sixth Circuit recently analyzed this issue in *Rice:*

> Additionally, all emails sent from Karsch to Paul Rice appear to have been sent to the email address "pfrracing@yahoo.com." There is nothing about this email address which indicates that Rice would have accessed his yahoo.com email account or otherwise read this email in Tennessee.  Finding personal jurisdiction over an individual merely because he sends an email to a generic email address is incomprehensible to this court.  If such reasoning were adopted by this Court, Karsch would be subject to personal jurisdiction in any location where said email address could be accessed, i.e., in *every* state regardless of whether the sender had any other contacts with that forum.

*Rice,* 154 Fed. Appx. at 462.[8]  Accordingly, plaintiffs have failed to show purposeful availment.

Plaintiffs have also not shown that their RICO cause of action arises from House's contacts with Ohio.  The operative facts of the controversy in this case arose in Canada. Plaintiffs do not allege that House had any other activities in Ohio other than sending emails to Brutz.  Although plaintiffs argue that House's activities caused "catastrophic consequences" to Brutz in Ohio, it is well-settled that "'the locus of such a monetary injury is immaterial, as long as the obligation did not arise from a privilege the defendant exercised in the forum state.'" *Calphalon,* 228 F.3d at 722 (quoting *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1298 (6th Cir. 1989)).  Further, nothing in the complaint or affidavits indicates that the subject matter of the emails or even the alleged representation of Brutz was connected to Ohio in any way.

Finally, plaintiffs have not shown that the Court's exercise of jurisdiction over House would be reasonable.  The Court finds that House's attenuated connections to Ohio make it

---

[8]     The Court notes that the Sixth Circuit ultimately did not consider these emails in determining that personal jurisdiction over the defendant did not exist in this case, as the emails were sent after the complaint was filed.

20

unreasonable to exercise personal jurisdiction over him.  The Court also agrees with defendant

House that he is not subject to personal jurisdiction under the forum selection clause in the

Agreement because he is not a party to the agreement, nor does his status as alleged co-

conspirator in a RICO action confer personal jurisdiction upon him without more.  *See*

*Ironworkers,* 23 F. Supp. 2d at 808 (citing *Helicopteros,* 466 U.S. at 417).  Accordingly, House's

motion to dismiss the claims against him for lack of personal jurisdiction is granted.

### C.     Defendants' Motions to Dismiss for Failure to State a Claim

All defendants seek dismissal of plaintiffs' suit for failure to state a claim.  The RICO

claim is asserted pursuant to 18 U.S.C. § 1962(c), which provides:

> It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or
> indirectly, in the conduct of such enterprise's affairs
> through a pattern of racketeering activity.

The RICO conspiracy claim is asserted pursuant to 18 U.S.C. § 1962(d), which provides:

> It shall be unlawful for any person to conspire to
> violate any of the provisions of subsection (a), (b),
> or (c) of this section.

To avoid dismissal of the RICO claim, plaintiffs must allege (1) conduct (2) of an enterprise (3)

through a pattern (4) of racketeering activity.  *Sedima v. Imrex Company, Inc.,* 473 U.S. 479, 496

(1985).  To avoid dismissal of the conspiracy claim, plaintiffs must also allege an agreement

between defendants to conduct the affairs of an enterprise through a pattern of racketeering

activity.  *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 495 (6th Cir. 1990).

### 1.     Enterprise

An enterprise under RICO "includes any individual, partnership, corporation, association,

21

or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  Plaintiffs do not appear to allege that defendants were associated through a legal entity.  Plaintiffs are thus required to plead the existence of an association-in-fact.  An association-in-fact enterprise can be proven by showing (1) that the associated persons formed an ongoing organization, formal or informal; (2) that they functioned as a continuing unit; and (3) that the organization was separate from the pattern of racketeering activity in which it engaged.  *VanDenBroeck v. Commonpoint Mortgage Co.,* 210 F.3d 696, 699 (6th Cir. 2000).[9]  Some minimal level of organizational structure enabling the associated persons to function as a racketeering organization for other purposes is required, including some evidence of a hierarchy.  *Id.* at 699-700.  Additionally, each associated person must have a distinct responsibility such that there is a division of labor.  *Thermodyn Corp. v. 3M Co.,* 593 F. Supp. 2d 972, 983 (N.D. Ohio 2008).

Defendants Stillwell and Spizzo argue that plaintiffs do not allege any sort of organization, hierarchy, or structure between defendants.  These defendants also argue that plaintiffs allege Stillwell himself comprised the Stillwell Enterprise, and that a defendant may not simultaneously be the enterprise and a person who conducts the affairs of the enterprise through a pattern of racketeering activity.  Defendants Stillwell and Spizzo also argue that plaintiffs do not allege that defendants engaged in other activities outside of the alleged predicate acts to show that the enterprise is distinct from the pattern of racketeering.

Plaintiffs respond primarily by reasserting the allegations of their complaint.  Plaintiffs

---

[9]        *VanDenBroeck* was abrogated on other grounds by the Supreme Court's decision in *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008).

do not address the arguments of defendants Stillwell and Spizzo that plaintiffs have not alleged any organization or structure between the defendants.

Upon review, the Court finds that plaintiffs have not adequately pled the existence of an enterprise.  As an initial matter, the Court notes that plaintiffs describe the alleged enterprise inconsistently.  In the complaint, plaintiffs allege that the RICO statute "describes an 'enterprise' among other things as '. . . any individual.'  In the case at bar the individual was Defendant Raymond Stillwell."  Earlier in the complaint, however, plaintiffs allege that defendant House was "a member of the Stillwell Enterprise which is described later in this pleading."  Plaintiffs further allege that "Stillwell and Spizzo upon behalf of the Stillwell Rico Enterprise (described below) corrupted and unlawfully influenced Norbert Wierszewski to betray Brutz and Cohl and join with Stillwell and Spizzo . . . ."  Plaintiffs' opposition brief reasserts that the Stillwell Enterprise consists of the individual Raymond Stillwell, and states that the enterprise must be alleged apart from the culpable person who associated with it for racketeering purposes. Plaintiffs go on to argue that the "culpable persons who associated with the culpable person for racketeering purposes are:  Defendant Spizzo, Defendant House, and Defendant Wierszewski." Construing the complaint in the broadest way possible and in favor of plaintiffs, it appears that plaintiffs are alleging that the Stillwell Enterprise existed prior to its association with defendants Spizzo, House, and Wierszewski, who became associated with the Enterprise and then engaged in the conduct described in the complaint.

Plaintiffs fail to plead any sort of organization among the defendants.  Plaintiffs do not allege any facts concerning the decision-making structure of the organization, its hierarchy, or the division of labor within the Enterprise.  Moreover, plaintiffs allege no facts showing that the

alleged Enterprise existed apart from its scheme to defraud plaintiffs.  At best, plaintiffs allege a simple conspiracy, which is beyond the purview of RICO.  *See Thermodyn Corp.,* 593 F. Supp. 2d at 983-84 (plaintiff at most showed a simple conspiracy where it did not identify and describe how defendants organized themselves in order to carry out pattern of racketeering and failed to allege a relationship distinct from fraudulent scheme); *Urbanek v. All State Home Mortgage,* No. 1:06 CV 1279, 2006 U.S. Dist. LEXIS 81301, at *15 (N.D. Ohio Oct. 27, 2006) (allegations that defendants worked together and worked through other defendants to deceive plaintiff insufficient to establish more than a simple conspiracy).  Accordingly, plaintiffs have failed to plead the existence of an enterprise.

### 2. Pattern of Racketeering Activity

To establish a pattern of racketeering activity, plaintiffs must allege at least two predicate acts of racketeering activity occurring within a 10-year period.  *Moon v. Harrison Piping Supply,* 465 F.3d 719, 723 (6th Cir. 2006).  Predicate acts may consist of offenses that are indictable under a number of state and federal statutes including mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, and extortion under 18 U.S.C. § 1951.  18 U.S.C. § 1961(1).

In addition to showing two predicate acts, plaintiffs are required to show "a relationship between the predicates and . . . the threat of continuing activity.  It is this factor of *continuity plus relationship* which combines to produce a pattern."  *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238 (1989).  To fulfill the relationship requirement, plaintiffs must allege that the predicate acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *Moon,* 465 F.3d at 724 (citing *H.J., Inc.,* 492 U.S. at 240 (internal quotations omitted)).

24

Plaintiffs may establish continuity by alleging either closed-ended continuity or open-ended continuity.  *Id.*  Closed-ended continuity is established by "proving a series of related predicates extending over a substantial period of time."  *Id.* at 725 (citing *H.J. Inc.,* 492 U.S. at 242 (internal quotations omitted)).  There are no firm rules as to what constitutes a substantial period of time, but the law is well-settled that racketeering activity lasting a few weeks or months and threatening no future criminal conduct is insufficient to establish continuity.  *Id.  See also Vild v. Visconsi,* 956 F.2d 560, 569 (6th Cir. 1992) (six or seven months insufficient to establish closed-ended continuity).  To show open-ended continuity, plaintiffs must allege facts showing "a distinct threat of long-term racketeering activity" or facts showing that the predicate acts "are part of an ongoing entity's regular way of doing business."  *Moon,* 465 F.3d at 727 (citing *H.J. Inc.,* 492 U.S. at 242 (internal quotations omitted)).

### a.  Predicate Acts

Defendants House[10] and Wierszewski argue that plaintiffs have failed to adequately plead mail and wire fraud because they have not pled the predicate acts with the particularity required.

Plaintiffs respond that they have set out a clear case of extortion, and have also spelled out "in exquisite detail" the fraudulent mailings and wires in this case, including the dates, times, and persons who sent the emails.  Plaintiffs also argue that Wierszewski "admits in detail" that he engaged in extortion.  Plaintiffs further argue that the complaint sets forth the fraudulent purpose of the emails sent by House to plaintiffs, which was to facilitate the fraud perpetrated by

---

[10]      Although the claims against defendant House are dismissed for lack of personal jurisdiction, the Court considers his arguments and plaintiffs' response because plaintiffs have stated throughout their opposition briefs that their responses to defendants' arguments are incorporated across the various briefs.

25

the Stillwell Enterprise and lull the plaintiffs into a false sense of security.

Upon review, the Court finds that plaintiffs have failed to properly plead the alleged predicate acts of wire fraud and mail fraud, and have not adequately pled facts that establish extortion.

To properly allege mail and wire fraud, plaintiff must show (1) a scheme to defraud, and (2) use of the mails, or of an interstate electronic communication, respectively, in furtherance of the scheme.  *Advocacy Org. for Patients and Providers v. Auto Club Ass'n,* 176 F.3d 315, 322 (6th Cir. 1999).  Further, plaintiffs must plead fraud with particularity, including the time, place, and content of the alleged misrepresentation[11]; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.  *Id.*

Plaintiffs allege that the scheme of the Stillwell Enterprise was to acquire the "knowledge and the know how" of plaintiffs, illegally terminate the Joint Venture, and convert the business opportunity of the Joint Venture to the advantage of Stillwell, Spizzo, and the Stillwell Enterprise.

As an initial matter, the Court notes that although plaintiffs vaguely refer to defendants sending "numerous false documents" via the U.S. mail, the predicate acts specifically described by plaintiffs are wire transfers, emails, and one fax, and thus are allegations of wire fraud, not mail fraud.

Plaintiffs allege that members of the alleged Stillwell Enterprise sent three emails that constitute wire fraud:  from Stillwell to Cohl on October 17, 2009 regarding environmental

---

[11]    The Supreme Court in *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 128 S. Ct. 2131, 2138 (2008) held that plaintiffs in a RICO action need not show reliance.

insurance; from House to Cohl, Brutz, Stillwell, and Spizzo on October 28, 2009 with unspecified content, and from House to Cohl, Brutz, Stillwell, and Spizzo on October 29, 2009 regarding a use of funds statement.  While plaintiffs have alleged the time and place of these emails, plaintiffs have not addressed the contents of the emails in anything more than the barest manner, nor do plaintiffs allege that the statements contained within the emails were false statements of fact that were "reasonably calculated to deceive persons of ordinary prudence and comprehension."  *Id.*  Plaintiffs do allege in the complaint that the electronic communications "were not necessarily in and of themselves fraudulent representation but were all sent to further and/or assist the Defendants in carrying out their scheme to defraud the plaintiffs."  Although plaintiffs allege that these emails were sent to lull the plaintiffs into a false sense of security, plaintiffs fail to explain how the emails accomplished the lulling and how it furthered defendants' alleged scheme to obtain plaintiffs' knowledge, terminate the Joint Venture, and convert the business opportunity of the Joint Venture to the benefit of the Stillwell Enterprise. The allegations relating to these emails fail to state a claim for wire fraud.

Plaintiffs also allege that defendant Wierszewski, or companies controlled by him, wire-transferred money to plaintiffs on three occasions:  on August 14, 2009, in the amount of $20,000, to F.S. Edwards Redevelopment Corporation, a company controlled by Cohl; on another occasion, in the amount of $25,000, to Cohl; and on a third occasion, in the amount of $25,000, to Cohl.  Plaintiffs do not give dates for the latter-referenced wire transfers except to allege that the money was then transferred by plaintiffs on August 19 and 25 to a company controlled by Stillwell and Spizzo.  Thus, the latter two transfers do not meet the "time" requirement of pleading fraud with particularity.  More troubling, however, is that plaintiffs

27

allege that all three of these transfers were payments by Wierszewski, or his company, to Cohl for metals that Wierszewksi bought from Cohl.  Moreover, plaintiffs do not allege that these purchases were related at all to the Joint Venture.  Although plaintiffs go on to allege that Wierszewski knew that plaintiffs would wire this money to other defendants "with the purpose and intention of the Defendant Wierszewski to further the goals of the Stillwell Enterprise," the Court finds the factual inference of what Wierszewski knew and intended to be unwarranted in light of the plaintiffs' explanation that these payments were for legitimate business debts, and the Court will not accept it as true.  Because fraudulent intent has not been adequately alleged with respect to these wire transfers, they have not been pleaded with particularity and fail to state a claim for wire fraud.

Plaintiffs also allege that they made two wire transfers to Circle Green LLC, a company controlled by defendants Stillwell and Spizzo:  for $25,000 on September 19, 2009, and for $25,000 on September 25, 2009.  Plaintiffs further allege that Stillwell and Spizzo "fraudulently received these funds on behalf of the Stillwell Enterprise, as they had no intention of legitimately completing the Joint Venture."  Plaintiffs, however, do not allege what the payments were for, or whether defendants Stillwell and Spizzo caused the payments to be transmitted as required by 18 U.S.C. § 1343, or how making these payments to defendants furthered defendants' scheme to obtain plaintiffs' knowledge, illegally terminate the Joint Venture, and convert the business opportunity to the Stillwell Enterprise.  The allegations relating to these transfers, therefore, fail to state a claim for wire fraud.

Plaintiffs also allege that Stillwell and Spizzo faxed the notice terminating the Joint Venture on October 29, 2009, and attach a copy of the fax to the complaint.  Plaintiffs

28

characterize this as a fraudulent document but do not specify in the complaint which representations in the termination notice are false.  The allegations relating to the termination notice thus do not state a claim for wire fraud.

Finally, plaintiffs' allegations regarding the November 2009 conduct of Wierszewski do not state a claim for extortion.  Extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951.  As an initial matter, this event took place after the Joint Venture Agreement was terminated and thus the alleged scheme of the Enterprise had been fulfilled.  Moreover, plaintiffs do not allege that they consented to turn over any property in response to Wierszewski's statements.

### b.    Relationship

Defendants Stillwell and Spizzo argue that plaintiffs cannot satisfy the relationship test, as the 2003 illegal tax avoidance scheme and the 2006 steel mill fraud allegedly perpetrated by the Stillwell Enterprise did not have the same purpose, participants, victims, or methods as the acts the Stillwell Enterprise allegedly committed against plaintiffs.

Plaintiffs respond that the acts they allege have the same or similar purposes, results, participants, victims, methods of commission, and are otherwise interrelated.  Plaintiffs also argue that the Stillwell Enterprise has been in existence since at least 2003.

Upon review, the Court finds that plaintiffs have not shown the illegal tax avoidance scheme and the steel mill fraud to be related to either each other or to the predicate acts involving the participants in the Joint Venture.  The allegations regarding the tax avoidance scheme and the steel mill fraud are so vague that the purpose, results, and methods of

commission of these schemes cannot be discerned.  The victims, Phone Masters Limited LTD and its stock holders and Alton Steel, are not alleged to be the same as or similarly situated to plaintiffs.  Finally, the participants in these schemes were not the same as the participants in the scheme that allegedly injured plaintiffs.  Plaintiffs state in the complaint that Stillwell and Spizzo did not know Wierszewski until plaintiffs introduced him to Stillwell and Spizzo; further, plaintiffs make no allegations regarding the participants of the earlier schemes except to allege that Stillwell was involved.  Plaintiffs cannot show a relationship between these earlier schemes and the acts related to the Joint Venture.

### c.      Continuity

As plaintiffs have not adequately pled a relationship between the tax avoidance scheme, the steel mill fraud, and the acts related to the Joint Venture, plaintiffs are limited to the acts related to the Joint Venture to establish continuity.  *Vild,* 956 F.2d at 569 ("Plaintiff may not complain about conduct which did not harm him under the guise of RICO continuity, unless those improper acts directed toward others are functionally related to the acts which harmed the plaintiff.").

Defendants argue that plaintiffs cannot show closed-ended continuity because the alleged acts occurred over a four and half month period, which is not adequate to satisfy the "substantial period of time" required for closed-ended continuity.  Defendants further argue that plaintiffs cannot establish open-ended continuity because they have not alleged that the predicate acts, by their nature, involve a distinct threat of long-term racketeering activity.

Plaintiffs respond that the predicate acts related to the Joint Venture "consist of open-ended continuity," because the conduct by its nature poses a risk of repeated and long-term

activity.  Plaintiffs further argue that when the Stillwell Enterprise's fraud was discovered, it was the Enterprise's regular way of doing business to settle with its victims, which establishes open-ended continuity.  Plaintiffs do not argue that they have established closed-ended continuity.

Upon review, the Court agrees that plaintiffs have not established closed-ended continuity, as the short period of time encompassing the alleged predicate acts related to the Joint Venture is insufficient as a matter of law to satisfy the continuity requirement.  *Moon,* 465 F.3d at 725.

Plaintiffs have also not established open-ended continuity.  Plaintiffs allege that the scheme of the Stillwell Enterprise was to gain plaintiffs' knowledge, illegally terminate the Joint Venture, and convert the business opportunity into one for the Enterprise.  With the Joint Venture terminated, the scheme is complete and the predicate acts do not involve a distinct threat of long-term activity.  Defendants' acts related to the Joint Venture could not possibly project into the future if the Joint Venture is terminated.  Accordingly, plaintiffs have failed to establish a pattern of racketeering activity.  Plaintiffs have therefore failed to state a claim for a RICO violation under 18 U.S.C. § 1962(c).

Plaintiffs have also failed to allege the essential elements of conspiracy, namely, an agreement between defendants to conduct the affairs of an enterprise through a pattern of racketeering activity.  For this reason, in addition to failing to establish a violation of 18 U.S.C. § 1962(d), plaintiffs have failed to state a claim for a RICO conspiracy.  *See Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 495 (6th Cir. 1990); *Miller v. Norfolk Southern Ry. Co.,* 183 F. Supp. 2d 996, 1003 (N.D. Ohio 2002) ("A conspiracy claim under 18 U.S.C. § 1962(d) fails when the substantive claim based on § 1962(c) is without merit." (citing *Bancoklahoma*

31

*Mortgage Corp. v. Capital Title Co., Inc.,* 194 F.3d 1089, 1103 (10th Cir. 1999) (internal quotations omitted))).  Accordingly, defendants' motions to dismiss for failure to state a claim are granted.

## II.       MOTION TO FILE SUPPLEMENTAL COMPLAINT

Plaintiffs move to supplement their complaint under Fed. R. Civ. P. 15(d):

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.  The court may permit supplementation even though the original pleading is defective in stating a claim or defense.  The court may order that the opposing party plead to the supplemental pleading within a specified time.

The same standard of review and rationale that apply to amending a claim under Fed. R. Civ. P. 15(a) apply to supplementing a complaint.  *Spies v. Voinovich,* 48 Fed. Appx. 520, 527 (6th Cir. 2002) (citing *McHenry v. Ford Motor Co.,* 269 F.2d 18, 24 (6th Cir. 1959) and *Glatt v. Chicago Park District,* 87 F.3d 190, 194 (7th Cir. 1996)).  Accordingly, justice does not require leave to supplement "if there has been undue delay, bad faith, dilative motive, or repeated failure to cure the deficiency by amendments previously allowed."  *Johnson v. Ventra Gp., Inc.,* No. 96-1463, 1997 U.S. App. LEXIS 21714, at *7 (6th Cir. Aug. 13, 1997) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).  Further, leave to supplement should also not be granted if the supplemental complaint would result in undue prejudice to the opposing party or if the supplemental complaint would be futile.  *Id.*

Plaintiffs move to supplement their complaint to add facts relating to Testa Corporation and to defendants' alleged conversion of assets of the Joint Venture into cash for their own use, and to add a claim for an accounting by defendants and a claim for the Court to appoint a

32

receiver.

Defendants Stillwell and Spizzo argue that leave to supplement should be denied because defendants would be prejudiced by the supplemental complaint, the supplemental claim would be futile, and plaintiffs' motives are dilatory.  In arguing that plaintiffs' supplemental claims are futile, defendants reference their opposition to plaintiffs' Motion for the Appointment of a Receiver.

Plaintiffs' reply brief merely asserts, without legal argument, that defendants will not be prejudiced, the claims are not futile, and plaintiffs' motives are not dilatory.

Upon review, the Court agrees with defendants that plaintiffs' claims for an accounting and for the appointment of a receiver are futile.  Initially, the Court notes that all of the allegations in the proposed supplemental complaint concerning Testa Corporation appear to be facts that were established prior to the filing of the original complaint and are thus not the proper subject for a supplemental complaint.  Even considering these allegations, plaintiffs' claim for appointment of a receiver is futile, as it would fail to state a claim under Fed. R. Civ. P. 12(b)(6).

"The appointment of a receiver is considered to be an extraordinary remedy that should be employed only in cases of clear necessity to protect plaintiff's interests in the property." *Resolution Trust Co. v. Fountain Circle Assocs. Ltd. Partnership,* 799 F. Supp. 48, 49 (N.D. Ohio 2002) (citing 12 Charles A. Wright & Arthur P Miller, *Federal Practice and Procedure* § 2983, at 21 (1973) (internal quotations omitted)).  Factors considered by a court in determining whether to appoint a receiver are fraudulent conduct on the part of the defendant; an imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; an inadequacy of legal remedies; a probability that harm to the plaintiff by denial of appointment

33

would outweigh injury to parties opposing appointment; the plaintiff's probable success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and whether plaintiff's interests sought to be protected will in fact be well-served by receivership. *Id.* at 50-51.

Given that plaintiffs' proposed supplemental complaint to add a claim for a receiver and an accounting is directly related to their RICO claims, and that the Court has already found that plaintiffs have no probability of success in this action because they have failed to adequately plead the existence of an enterprise, a pattern of racketeering activity, and the predicate fraud acts, the Court finds that supplementing the claim would be futile. The Court finds it unnecessary to address the parties' remaining arguments concerning prejudice and dilatory motive. Accordingly, plaintiffs' Motion to File Supplemental Complaint is denied.

## III.   MOTION TO AMEND

A party may amend its pleadings with leave of court, and the court should freely give such leave when justice requires. Fed. R. Civ. P. 15(a)(2). Justice does not require leave to amend "if there has been undue delay, bad faith, dilative motive, or repeated failure to cure the deficiency by amendments previously allowed." *Johnson*, 1997 U.S. App. LEXIS 21714, at *7 (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Leave to amend the complaint should also not be granted if the amendment would result in undue prejudice to the opposing party or if the amendment would be futile. *Id.*

Plaintiffs move for leave to file a third amended complaint, which they argue adds a claim for a violation of 18 U.S.C. § 1962(a) and further establishes continuity. Plaintiffs' proposed amended complaint adds a sentence regarding the alleged steel mill fraud, a paragraph

34

concerning an alleged fraud perpetrated by the Stillwell Enterprise upon Spirtas Canada, an allegation that defendant Stillwell is not being named as a defendant under 18 U.S.C. § 1962(c) but under 18 U.S.C. § 1962(a), and deletes allegations that defendant Wierszewski told plaintiff Cohl that he would be smart to take the million offered by Stillwell and run to avoid criminal prosecution.

Defendants Stillwell, Spizzo, and House argue that the proposed amendment is futile because it fails to state a claim under § 1962(a), as plaintiffs do not allege that Stillwell used or invested the income he allegedly received  from the operation of an enterprise in the acquisition, establishment, or operation of an enterprise, nor do they allege they suffered any injury due to the use or investment of enterprise income.  Defendants further argue that the proposed amended complaint does not adequately allege a pattern of racketeering activity, including continuity. Defendants also argue that plaintiffs' repeated attempts to amend their complaint is dilatory.

Plaintiffs do not respond in any meaningful way to defendants' arguments relating to failure to state a claim under § 1962(a) or to continuity, referring instead back to the proposed amended complaint.  Plaintiffs further argue that the proposed amended complaint meets the relationship test set forth in *Vild,* 956 F.2d 560 (6th Cir. 1992).

Upon review, the Court finds granting leave to amend would be futile.  Plaintiffs do not state a claim under § 1962(a), which states in relevant part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities

of which affect, interstate or foreign commerce.

Plaintiffs make no allegations relating to defendant Stillwell's use of the money he allegedly received from the pattern of racketeering activity.

Moreover, the proposed third amended complaint does not cure any of the defects in the second amended interlineated complaint relating to the existence of an enterprise, and the pattern of racketeering activity, including predicate acts, relationship, and continuity.  Although plaintiffs purport to further establish continuity by including the allegations referencing Spirtas Canada, those allegations do not establish a predicate act because plaintiffs fail to describe the fraud with particularity.  Accordingly, plaintiffs' motion for leave to file a third amended complaint is denied.

## IV.	THE REMAINING MOTIONS ARE MOOT

Having dismissed plaintiffs' second amended interlineated complaint and having found that a supplemental complaint and further amendment would be futile, the Court finds that the following motions currently before the Court are moot:  plaintiffs' Motion for the Appointment of a Receiver; Motion to Intervene of Spirtas Wrecking Company Canada, Spirtas Wrecking Company New Richmond, and Spirtas Wrecking Company Pontiac; and Motion of Defendant Kevin House to Strike Portion of Plaintiffs' Reply in Support of Motion to Appoint Receiver.

### **CONCLUSION**

For the foregoing reasons, the Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim filed by defendant Kevin House; Motion to Dismiss Plaintiffs' Second Interlineated Amended Complaint Pursuant to FRCP 12(b)(6) and FRCP 12(b)(1), filed by Norbert Wierszewski; and Motion to Dismiss filed by defendants Raymond Stillwell and Mark

36

Spizzo are GRANTED; plaintiffs' Motion to File Supplemental Complaint FRCP 15(d) and

plaintiffs' Motion for Leave to File Third Amended Complaint to Add a Violation of 18 U.S.C.S.

§ 1962(a) and to Further Establish Continuity are DENIED; and plaintiffs' Motion for the

Appointment of a Receiver (FRCP 66 and 28 U.S.C.S. § 754); Motion to Intervene of Spirtas

Wrecking Company Canada, Spirtas Wrecking Company New Richmond, and Spirtas Wrecking

Company Pontiac; and Motion of Defendant Kevin House to Strike Portion of Plaintiffs' Reply

in Support of Motion to Appoint Receiver are MOOT.

      IT IS SO ORDERED.


          /s/ Patricia A. Gaughan
          PATRICIA A. GAUGHAN
          United States District Judge

Dated: 5/12/10

37